**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

DEBORAH WALTON,                        )
MARGARET WALTON,                       )
                                       )
                    Plaintiffs,        )
        vs.                            )          No. 1:07-cv-1484-DFH-WGH
                                       )
CLAYBRIDGE HOMEOWNERS ASSOC. INC., )
  et al.,                              )
                                       )
                    Defendants.        )

**Entry Discussing Motion for Summary Judgment**
**and Directing Entry of Judgment**

The defendants' motion for judgment on the pleadings, having been converted to a motion for summary judgment, and the plaintiffs' response thereto, have been considered. For the reasons set forth in this Entry, the motion for summary judgment (dkt 23) must be granted.

**I.  Background**

Plaintiffs Deborah Walton and her mother Margaret Walton bring this action pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* (FDCPA), Indiana Trial Rule 69(a), 42 U.S.C. §§ 1983, 1981, 1982, and the Fifth and Fourteenth Amendments to the United States Constitution. The defendants are the Claybridge Homeowners Association, Inc., the law firm of Hostetler-Kowalik, P.C., attorney Christopher E. Baker, and attorney Gary Lynn Hostetler.

**II.  Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is

genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for his motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact. See *Celotex,* 477 U.S. at 323. "'[A] party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

### III. Undisputed Facts

On the basis of the pleadings and the expanded record, and specifically on the portions of that record that comply with the requirements of Rule 56(e), the following facts are undisputed for purposes of the converted motion for summary judgment:

Deborah and Margaret Walton reside at 12878 Mayfair Lane, Carmel, Indiana, in a subdivision commonly referred to as Claybridge or Claybridge at Springmill ("the Property"). Deborah Walton and Claybridge were involved in a dispute leading Claybridge to file a complaint against Deborah in the Hamilton County Circuit Court, in No. 29C01-0110-CT-935 ("the State Court Action") on October 15, 2001. On March 10, 2003, the State Court Action was re-docketed as No. 29D03-0303-CT-200. In the State Court Action, Claybridge sought preliminary and permanent injunctive relief and monetary damages based upon Deborah's damage to Claybridge's property and her interference with certain easement rights Claybridge possessed as to Deborah's property via a recorded Declaration of Covenants and Restrictions ("the DCR"). Deborah filed her counterclaims for libel and trespass in the State Court Action.

On June 28, 2002, the court in the State Court Action entered its Findings of Fact Conclusions of Law ("the State Court Findings") and a "Permanent Injunction/Restraining Order." The court found that Claybridge substantially prevailed under its complaint and that Claybridge was entitled to recover all costs of enforcement, attorneys fees, and other damages, if any, after a hearing on those issues.

Deborah appealed the State Court Findings, which the Indiana Court of Appeals affirmed on July 15, 2003. A hearing was then held before the trial court in the State Court Action to determine Claybridge's fees, costs, and damages. This hearing resulted in an Order dated July 15, 2004 awarding damages to Claybridge ("the Damage Award"). The Damage Award was not a final judgment at that time because of Deborah's unresolved

counterclaims in the State Court Action.  By its own terms, however, the Damage Award "constitute[d] a liquidation of the attorney fees claim," and prejudgment interest accrued from the date of the order until a final judgment was entered.

Deborah Walton then filed a second appeal in the State Court Action arguing that the Damage Award was erroneous.  Claybridge's motion to dismiss this appeal was denied because the Damage Award was an order for the payment of money, and therefore constituted an interlocutory order immediately appealable as a matter of right under Indiana law. On April 12, 2005, the Court of Appeals affirmed the Damage Award.  On December 4, 2006, a second trial occurred on Deborah's counterclaims. A ruling was then issued by the trial court in Claybridge's favor. Deborah appealed that decision, and the Indiana Court of Appeals affirmed on or about October 19, 2007.  Deborah's subsequent petition for transfer was denied.

On October 30, 2007, Claybridge filed a Complaint to Foreclose its judicial lien on the Property. Margaret Walton was named as a defendant in the foreclosure action to answer as to any interest she might have had in the Property as the result of a Quitclaim Deed dated June 28, 2001 and recorded on or about April 12, 2007.

Neither at the time of the filing of the Complaint to Foreclose Judicial Lien nor at any other times relevant to the collection of the judgment were the defendants acting on behalf of any local, state, or federal governmental entity. At no time did any of the defendants act in concert, agreement or connection with any local, state, or federal governmental agency for the purpose of illegally depriving Deborah or Margaret of their Property.

## IV.  Discussion

### A.    FDCPA

The Waltons allege in their amended complaint that the defendants violated the FDCPA by making false representations of the legal status of the debt in question (the Damage Award). They contend that the debt did not constitute a valid lien on the Property. The defendants argue that the court lacks jurisdiction over the Waltons' FDCPA claims because the underlying debt does not qualify as a "debt" under the FDCPA.

The court takes judicial notice of the decision in *Walton v. Rubin & Levin, P.C. et al.*, 1:05-cv-1132-LJM-VSS  (S.D. Ind. March 27, 2006). *See In re Salem,* 465 F.3d 767, 771 (7th Cir. 2006) (a court may take judicial notice of its own records)(citing cases). In that decision, Judge McKinney was faced with the identical question, whether Deborah's obligation to pay what is referred to in this Entry as the Damages Award constituted a "debt" under the FDCPA. Judge McKinney stated the following:

> The issue presented is whether the defendants' actions violated the FDCPA.  It must be determined whether the FDCPA applies to these circumstances, meaning, whether Walton's obligation to pay Claybridge the sum ordered in the July 15, 2004, order constituted a "debt" as defined under the FDCPA.

"The primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices, including threats of violence, use of obscene language, certain contacts with acquaintances of the consumer, late night phone calls, and simulated legal process." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997) ("the definition of 'debt' thus serves to limit the scope of the FDCPA"). "The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

To determine whether money owed to Claybridge constitutes a "debt" under the FDCPA, the court engages in a two-party inquiry. *Berman v. GC Services Ltd. Partnership*, 146 F.3d 482, 484 (7th Cir. 1998). First, does the money qualify as an "obligation of a consumer to pay money arising out of a transaction?" *Id.* Second, was the money owed "primarily for personal, family, or household purposes?" *Id. See also Bass*, 111 F.3d at 1325 (a "debt" is "any obligation to pay arising out of a [consumer] transaction"). "[T]he FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services." *Id.* at 1326. For the first component, all that is required is "an obligation to pay arising from a consensual transaction, where parties negotiate or contract for consumer-related goods or services." In this case, the money Walton owed to Claybridge was the result of a legal dispute over property rights and an award of damages and attorney's fees. Claybridge asserted its claim that Walton had destroyed certain property and had interfered with Claybridge's rights under the DCR. The trial court and appellate court found in Claybridge's favor. The resulting damage and fees award is the obligation that the defendants have attempted to recover. The underlying DCR did not directly create the obligation on the part of Walton to pay money. Rather, Walton's interference with Claybridge's rights under the DCR resulted in the lawsuit and an order to pay money. Therefore, the first element of the statutory definition of "debt" is not satisfied and the obligation at issue is not a "debt" pursuant to the FDCPA. *See Berman*, 146 F.3d at 487 ("[A]n obligation will only be considered a 'debt' if it meets both statutory requirements.").

*Walton v. Rubin & Levin, P.C. et al*, 1:05-cv-1132-LJM-VSS, at p. 2. Judge McKinney concluded that there was no consensual transaction for the purchase of goods or services and that the FDCPA did not apply and that therefore, the court lacked subject matter jurisdiction over Deborah's FDCPA claim.  Id. at 3, citing *Berman v. GC Services Ltd. Partnership*, 146 F.3d 482 (7th Cir. 1998).

The Waltons argue that the FDCPA applies because they believe that the Seventh Circuit has held that debts comparable to the attorney fees at issue in this case constituted

a "debt" under the FDCPA. They rely on *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477 (7th Cir. 1997). *Newman* does not control the outcome of this case. In *Newman*, the court concluded that assessments owed to a condominium association qualified as a "debt" under the FDCPA. *Id.* at 480-82. This case, however, does not involve past due assessments. Rather, the underlying obligation arose from a state court action in which Deborah Walton was found liable for damages and attorney fees due to her interference with Claybridge's attempts to maintain its easements – in other words, due to her violation of the DCR.

In addition, the Waltons argue that the order of July 15, 2004 was not a final judgment and that the defendants' attempt to foreclose a judicial lien on October 30, 2007 therefore violated various provisions of the FDCPA, 15 U.S.C. §§ 1692(c),(e),(f), (g), and 1692k(c). It is true that in its order of July 15, 2004 the court declined to enter it as a final judgment in favor of Claybridge for the reason already noted. The court stated that "this order does constitute a liquidation of the attorney fees claim and prejudgment interest shall begin from this date until final order is entered." The counterclaims, however, were dismissed on December 4, 2006, and the state court's decision was affirmed on appeal on October 19, 2007. Claybridge filed the complaint to foreclose its lien on October 30, 2007.[1]

Any doubt as to the finality of the July 15, 2004, order was put to rest by the resolution of the counterclaims on December 4, 2006, and by the subsequent affirmance by the Indiana Court of Appeals on October 19, 2007. The liquidation of the attorney fees, the order for the payment of a specific amount of money, was determined prior to the filing of the foreclosure complaint. No further issues remained pending in the State Court Action at the time the foreclosure action was filed.

The court finds Judge McKinney's analysis persuasive and correct, except that whether an obligation qualifies as a "debt" under the FDCPA is better treated not as a question of subject matter jurisdiction but as an element of the claim, though there is some ambiguity in the case law. See *Berman*, 146 F.3d at 484 (applying Rule 12(b)(6) to affirm district court's decision to dismiss for lack of subject matter jurisdiction). The court also finds the Waltons' arguments unpersuasive. The wheel need not be recreated. The undisputed facts show that the Waltons are not entitled to relief under the FDCPA.

## B.    42 U.S.C. § 1983

"Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The Waltons allege that their Fifth and Fourteenth Amendment rights were violated when the defendants used "unconscionable means to attempt to collect debt without a valid lien on the real estate that they filed foreclosure on being permitted by law."

[1]The Waltons argue that an Order on Motion to Expunge Lien entered in state court on October 12, 2005 proves that the defendants knew they did not hold a valid lien. This contention is misplaced, however, because the motion to expunge lien, to which the defendants consented, sought to expunge a different prior lien recorded on November 25, 2002.

A claim under 42 U.S.C. § 1983 requires proof that the defendant acted "under color" of state law.  A person acts under color of state law only when exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *United States v. Classic,* 313 U.S. 299, 326 (1941).  The Waltons argue that Claybridge and its attorneys acted under color of state law by virtue of the fact that they were aware that the Damage Award did not create a valid lien against the Waltons' property. The Waltons contend that the defendants were bound by state court rules of procedure regulated by the Indiana Supreme Court and that this connection is sufficient to establish action "under color of state law" for purposes of § 1983.  Following this line of thinking, all actions taken by attorneys in the State of Indiana would be taken under color of state law, and this simply is not the law.

Private attorneys do not act under color of state law in representing their clients in civil or even in criminal matters. *See Fries v. Helsper*, 146 F.3d 452 (7th Cir. 1998) (allegation that attorneys had conspired with state court judge to obtain dismissal of an action did not state a claim under §1983; *Kurowski v. Krajewski,* 848 F.2d 767, 769 (7th Cir. 1988) (although paid by the state, public defenders in their role as counsel are not "state actors") (citing *Polk County v. Dodson,* 454 U.S. 312, 325 (1981)); *Cornes v. Munoz,* 724 F.2d 61 (7th Cir. 1983); *Hansen v. Ahlgrimm*, 520 F.2d 768, 770 (7th Cir. 1975) ("It is established that a private attorney, while participating in the trial of private state court action, is not acting under color of state law.").[2] Accordingly, the defendants are entitled to summary judgment as to the Waltons' § 1983 claims.

---

[2]The Waltons concede that there is no private cause of action under Trial Rule 69 but they argue that such a claim is validly subsumed as a violation of the Fifth and Fourteenth Amendments under § 1983. The Waltons still cannot get there from here. Absent state action, there is no viable claim under § 1983. Similarly, the Waltons cannot proceed with a claim directly under the constitutional provisions they invoke. *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 925 (9th Cir. 2001) ("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983").

### C.    42 U.S.C. §§ 1981[3] and 1982[4]

The Waltons have not presented *any* evidence that would support a finding that the defendants violated their rights under 42 U.S.C. § 1981 or § 1982. The Waltons have merely argued that the defendants interfered with the contractual relationship that the the Waltons had with their mortgagees concerning the real estate. The Waltons have not alleged or submitted any evidence that their race played any part in the proceedings in state court. The only possible resolution of these unsupported claims is to award summary judgment in favor of the defendants. "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

### V.  Conclusion

For the reasons set forth above, the defendants are entitled to summary judgment as to all of the plaintiffs' claims. Judgment consistent with this Entry shall now issue.

So ordered.

_David F. Hamilton_
_____
DAVID F. HAMILTON, Chief Judge
United States District Court

Date:    3/16/09

---

[3]42 U.S.C. § 1981 provides:
a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

[4]42 U.S.C. § 1982
All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.